[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Patra, Greece on September 1, 1983. They have three minor children, to wit: NIKI PAPAKOS, born June 5, 1984; POTA PAPAKOS, born August 27, 1985; and DIMITRIOUS PAPAKOS, born August 17, 1990. All three children reside with the plaintiff Wife ("Wife") in the family home at 136 Wepawaug Drive, Milford, Connecticut. The parties have lived separate and apart since sometime in 1999. The defendant Husband ("Husband") currently rents at 42 Carriage Path, Milford, Connecticut.
The Wife is thirty-seven (37) years old and in apparent good health. She currently works full-time as a counselor at the Kennedy enter in Milford where she earns $24,440.00 per annum. She does not get a bonus, but she does have group health insurance coverage for herself and the children. Prior to their marriage, she was a student at Boston University for two years and later worked for a short time at Emery Airfreight on a part-time basis. She interrupted her work and studies to marry and raise a family. After the couple was married and they had returned from Greece, CT Page 9747 she worked part-time in her father's restaurant. She later completed her bachelors degree from the University of New Haven, majoring in psychology and political science, and she is currently working on her Masters degree. Throughout the marriage, the Wife performed the role of homemaker. In 1998, she returned to work, first as a part-time Court Advocate at $10.00 per hour for six months, and later she joined the Kennedy Center on a full time basis.
The Husband is thirty-nine (39) years old and is also in apparent good health. He is a self-employed contractor, who, since July of 1997, installs windows under a business arrangement with The Window Company of Brooklyn, Connecticut. Based upon his figures for the year 1999, his net earnings from his business amount to approximately $60,000.00 per year. He has a high school education. After the couple returned from Greece, he first worked at his father-in-law's restaurant for approximately three years. Thereafter, he formed his own construction business to perform renovations. He used approximately $10,000.00 of the couple's savings as start-up capital. He was the sole support of the family through 1997. Sometime later, financial problems necessitated his transfer of the business and the then family home to the Wife's name alone. Bankruptcy followed. While self-employed, he testified that he did perform some side jobs. However, he indicated clearly that this is not permitted under his current arrangement with The Window Company.
The home in Milford is, according to the Wife's financial affidavit, worth $155,000.00 and has a $25,000.00 mortgage on it. The property was purchased with the net proceeds from the sale of the previous residence which had to be rebuilt after a devastating fire in 1993. The first house had been purchased in part with a gift of $20,000.00 from the Wife's parents. As a result of the family financial difficulties, the real estate was transferred to the Wife's name. The parties also cashed in IRAs as well as the childrens' college funds amounting to between $16,000.00 and $20,000.00. Their financial problems were compounded by growing marital strife. The Wife has borrowed heavily from family sources. There was some testimony to the effect that the financial problems were exacerbated when the Wife arbitrarily closed the Husband's business (which he had also transferred to her name alone), thus effectively preventing his earning a living at his chosen profession, not to mention his ability to support his family. It was at this time that the former family home was subject to an action for foreclosure.
The Wife introduced testimony regarding the Husband's interest in a home in Patra, Greece. The property was described as a studio apartment built on top of the home occupied by his mother and which is adjacent to that occupied by his sister. The original family property was owned by his late father who had previously transferred a one-half interest to the CT Page 9748 Husband's sister, and the other one-half by Will to the Husband, subject to a life use in his mother and an easement to his sister for ingress and egress to her adjoining home. The father's last Will and Testament dated August 30, 1992, was introduced along with a translation. The Wife testified that in 1995 the parties used at least $5,000.00 of family funds to build a studio unit on top of his mother's residence.
The Husband drives a 1987 Mercedes which, according to his testimony, he transferred to his current significant other "for insurance purposes." In addition, a question was raised as to whether or not the Husband owns a 27' power boat purchased in October 1999 for $12,000.00. Testimony of an independent witness indicated that the boat was purchased and is owned by the Husband's current significant other. However, the Husband testified that he uses the boat, and that he has paid the annual storage fees associated with it.
Over the course of two days of testimony, the Court heard allegations that the cause of the breakdown of the marriage was a result of the extreme physical and sexual abuse by the Husband, in addition to his controlling behavior and a penchant for gambling. In addition, the Husband admitted to an affair midway through the marriage, and currently lives with one Carol DiBlassi. The Husband introduced testimony by himself and two independent witnesses that the Wife was given to creating very vocal public scenes in front of the Husband's friends and co-workers. On one occasion, the Husband testified that during and argument, the Wife stabbed him with a sharp pencil.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Regulations, hereby makes the following findings:
1. That it has jurisdiction.
 2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown, however, the Court finds that the Husband must bear the greater responsibility for the breakdown due to his consistent misconduct, including his infidelity, throughout the CT Page 9749 marriage.
 4. That based upon the financial affidavits of the parties, the presumptive level of child support is $265.00 together with $14.00 per week as and for a child care contribution, for a total support obligation of $279.00 per week.
 5. That, based upon a review of the Will of DIMITRIOUS PAPAKOS dated April 27, 2000 (Exhibit #17), the Husband is the owner of a dwelling known as Yiota Sigma One located in the town of Patra, Greece, together with the one-half of the lot on which it sits, subject to a life use in his mother, and subject to an easement of his sister for ingress and egress to her adjoining dwelling and who is also the owner of same and the one-half of the lot on which it sits, and that the parties contributed at least $5,000.00 of family funds to the construction of a studio apartment above the dwelling now occupied by the Husband's mother.
 6. That the Court does not find the Husband's testimony credible that he has no interest in a 27' power boat purchased during the pendency of this matter, and that it is more likely than not that he has at least some ownership interest in it, legal or equitable.
 7. That the Husband is the owner of a 1987 Mercedes which he transferred to one Carol DiBassi during the pendency of this matter.
 8. That the parties have stipulated that they will share joint legal custody of the minor children, and that the primary residence of the children shall be with the Wife, which Custody Stipulation dated June 30, 2000, is on file with the Court.
9. That while the Husband currently has greater actual earnings than the Wife, given her age and education, in particular her pursuit of a Masters degree, as well as the ages of the minor children, her long-term earning capacity is greater than that reflected in her current actual earnings, and that the earnings gap between the parties is more likely than not to narrow in the near CT Page 9750 future.
 ORDERS
1. The marriage of the parties is hereby dissolved on the grounds of irretrievable breakdown, and they are each hereby declared to be single and unmarried.
2. The parties shall share joint legal custody of the minor children, to wit: NIKI PAPAKOS, born June 5, 1984; POTA PAPAKOS, born August 27, 1985; and DIMITRIOUS PAPAKOS, born August 17, 1990. The primary residence of the minor children shall be with the Wife, subject to the reasonable, liberal and flexible visitation rights of the Husband. Initial visitation with the Husband shall be every Wednesday from 5:00 P.M. to 8:00 P.M. and every Sunday from 10:00 A.M. to 8:00 P.M. and at such other times as the parties may agree. The parties shall consult with one another concerning all major issues involving the minor children, including but not limited to, health, education, and religious affiliation and training. In the event that parties are unable to agree upon any issue regarding custody and/or appropriate visitation, they shall first bring the matter to the Family Relations Office prior to a determination by the Court.
3. Commencing September 1, 2000, and weekly thereafter, the Husband shall pay to the Wife the sum of $100.00 as and for periodic alimony, until the death of either party, the remarriage of the Wife, or September 1, 2005, whichever shall sooner occur. Thereafter, he shall pay periodic alimony at the rate of $75.00 per week until the death of either party, the remarriage of the Wife, or September 1, 2010, whichever shall sooner occur.
4. Commencing September 1, 2000, and weekly thereafter, the Husband shall pay to the Wife the sum of $279.00 as and for child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining children shall be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct. The foregoing notwithstanding, if any child CT Page 9751 shall turn eighteen years old and is still in high school, then, in that event, the child support for that child shall continue until the first day of next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to Section 46b-84 (b) C.G.S.
5. The Wife shall maintain health insurance for each of the minor children so long as the Husband shall be obligated to pay child support for that child. Un-reimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses, together with the premium for health insurance, for the minor children, shall be divided by the parties, 60% by the Wife and 40% by the Husband. The provisions of Section 46b-84 (e) shall apply.
6. The Wife shall promptly notify her employer as to the change of marital status and shall cooperate with the Husband in obtaining continuation health insurance coverage as provided by state and federal law, if he shall so elect, the premiums for which shall be his sole responsibility.
7. The Wife shall have exclusive possession of the real estate located at 136 Wepawaug Drive, Milford, Connecticut, and shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the Husband harmless from any further liability thereunder. Within thirty (30). days from the date of this Memorandum of Decision, the Wife shall, by Quit Claim Deed, transfer a twenty-five (25%) percent interest in the real property to the Husband. The real estate shall be listed for sale at the time the youngest child reaches the age of nineteen (19) years of age or graduates from high school whichever shall sooner occur. The net proceeds shall be divided by the parties 75% to the Wife and 25% to the Husband. Net proceeds shall be defined as the gross selling price of the property less the brokers commission, attorneys fees, conveyance taxes, mortgage/lien balances, as well as the customary and ordinary costs associated with the transfer of title. Prior to the division of the net proceeds, the Wife shall be entitled to a credit equal to the amount by which the current mortgage balance(s) have been CT Page 9752 reduced between the date of this Memorandum of Decision and the date of transfer of title. Neither party shall, without the agreement of the other or further order of this Court, place or cause to be placed any additional liens, mortgages, or other encumbrances on the property prior to sale. Any maintenance, repair, or replacement costing more than $250.00 shall be paid for by the parties in the same proportion as their share of the net proceeds upon sale. The Court shall retain jurisdiction to decide any issues which may arise regarding the sale and/or division of the real estate.
8. The Husband shall be entitled to keep his interest in the real estate in Patra, Greece, free and clear of any claims by the Wife.
9. personal property shall be divided as follows:
 A. The children's furniture shall remain in the Wife's residence.
 B. The home furnishings (other than the children's furniture) shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
 C. Each party shall be entitled to keep the automobile(s) which they are currently driving free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
 D. The Husband shall be entitled to keep free and clear of any claims by the Wife, his interest in the 27' power boat currently in the name of Carol DiBlassi.
E. As to the remaining personal property, the parties shall each be entitled to retain the personal property as shown on their respective financial affidavits, free and clear of any claims by the other. CT Page 9753
10. The parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon. The foregoing notwithstanding, in addition to the debts shown on his financial affidavit, the Husband shall be responsible for one-half of the Chase Visa bill ($2,500.00), one-half of the Peoples Visa bill ($5,000.00), Dr. Russo ($249.00), American Medical Response ($512.00), and St. Raphael's Hospital ($623) all as listed on the Wife's financial affidavit for a total of $8,884.00, and he shall indemnify and hold the Wife harmless from any further liability thereon.
11. If group term life insurance shall become available to the Husband through his current or any future employment, at reasonable cost, and provided he is insurable, the Husband shall obtain and maintain the maximum amount available, but not to exceed a face value of $150,000.00, for the benefit of the minor children, so long as he has any financial obligation to any of them pursuant to this Memorandum of Decision. The Court shall retain jurisdiction to decide any issues which may arise regarding life insurance.
12. The Husband shall contribute to the Wife's attorneys fees in the amount of $2,500.00, payable as follows: $500.00 on September 1, 2000, and on the first day of each and every month thereafter until paid in full. The Wife shall be responsible for the balance of her fees incurred in connection with this action.
13. So long as he is current in his child support payments, the Husband shall be entitled to claim the personal exemptions for the minor children, NIKI PAPAKOS and POTA PAPAKOS, on the state and federal income tax returns, and the Wife shall promptly execute the necessary documentation and deliver same to the Husband in a timely manner for filing with the IRS and/or the state taxing authority on an annual basis.
14. The Court hereby orders a Contingent Wage Withholding Order pursuant to Section 52-362 C.G.S. in CT Page 9754 order to secure the payment of the alimony and child support orders, however, the Husband shall make arrangements for said payments to the Wife to be made by direct deposit to an account designated by her for that purpose.
THE COURT
 By ___________________ Shay, J.